1

2

3

4

5

6

7

8

**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 9<br>10<br><br>11<br><br>12<br><br>13<br>14<br>15<br>16<br><br>17<br><br>18<br><br>19<br><br>20 | **SIERRA CLUB, CENTER FOR** )<br>**BIOLOGICAL DIVERSITY, and** )<br>**DEFENDERS OF WILDLIFE,** )<br>                           )<br>       **Plaintiffs,** )<br>                           )<br>       **v.** )<br>                           )<br>**JAMES KENNA, in his official capacity** )<br>**as California State Director, Bureau of** )<br>**Land Management, UNITED STATES** )<br>**BUREAU OF LAND MANAGEMENT,** )<br>**and KEN L. SALAZAR, in his official** )<br>**capacity as Secretary, United States** )<br>**Department of the Interior,** )<br>                           )<br>      **Federal Defendants,** )<br>                           )<br>**NORTH SKY RIVER ENERGY, LLC,** )<br>                           )<br>      **Intervenor-Defendant.** )<br>——————————————————— ) | 1:12-cv-1193 AWI JLT<br><br><br>**MEMORANDUM OPINION**<br>**AND ORDER ON PARTIES'**<br>**MOTIONS AND CROSS**<br>**MOTIONS FOR SUMMARY**<br>**JUDGMENT**<br><br>**Doc. #'s 64, 70 and 71** |

21

22      This is an action for injunctive relief by plaintiffs Sierra Club, Center for Biological

23 Diversity, and Defenders of Wildlife ("Plaintiffs") against defendants James Kenna in his official

24 capacity, United States Bureau of Land Management and Ken L. Salazar in his official capacity

25 ("Federal Defendants") and Intervenor-Defendant North Sky River Energy, LLC ("NSRE")

26 (collectively, "Defendants"). Plaintiffs' complaint seeks judicial review of a decision by

27 defendant Bureau of Land Management ("BLM") to grant right of way to NRSE for a route over

28 federal land connecting a state road with a wind energy project located entirely on private land.

1  Plaintiffs' complaint alleges the grant of right of way was made in violation of the National

2  Environmental Policy Act ("NEPA") and the Endangered Species Act ("ESA").  Currently before

3  the court are motions and cross-motions by all parties for summary judgment.  Federal subject

4  matter jurisdiction exists pursuant to 28 U.S.C. § 1331.  Venue is proper in this court.

5  **FACTUAL BACKGROUND/UNDISPUTED MATERIAL FACTS**

6  Defendant-Intervenor NSRE, a developer of wind-power projects, proposes to develop

7  12,781 acres of entirely private land situated at the southern end of the Sierra Nevada mountain

8  range north-east of Tehachapi, California, for the purpose of wind power generation (the "Wind

9  Project") .  The Wind Project is anticipated to contain up to 102 wind turbines and have a

10 maximum electrical output of up to 300 megawatts.  The parties agree that the operation of wind

11 turbines inevitably results in some level of avian fatalities due to the collision of birds with

12 moving turbine blades.  In this regard there are three bird species that are of particular interest to

13 Plaintiffs' complaint; the California condor (*Gymnogyps californicus*), the southwestern willow

14 flycatcher (*Empidonax traillii extimus*), and the golden eagle (*Aquila chrysaetos*).  Of these three

15 species the first two are listed as endangered under the California Endangered Species Act; Cal.

16 Fish & Game Code § 2050 *et seq*., and the third species is federally protected under the Bald and

17 Golden Eagle Protection Act, 16 U.S.C. § 668 *et seq*.

18 In December 2010, NSRE applied to BLM for a right of way over federal land for the

19 purpose of establishing a road to service the Wind Project and for the purpose of establishing

20 underground power transmission lines and fiber optic communications lines (hereinafter the

21 "Road" or "Road Project").  BLM conducted an environmental assessment (EA) of the Road

22 Project.  In conducting the EA on the Road Project, BLM determination that its scope of review

23 must be confined to the environmental impacts of the construction of the Road itself because the

24 Road and Wind Projects are not connected.  Thus, BLM concluded its EA could not incorporate

25 the much broader impacts of the Road plus the Wind Project.  BLM's EA resulted in a finding of

26 no significant impact (FONSI) based on this narrower scope of review.  Based on its FONSI and

27

28                                                          2

based on the undisputed fact that the establishment of the Road Project over federal land would involve less environmental impact than the establishment of access to the Wind Project over private land, BLM issued the requested right of way to NSRE.

BLM based its scope of review decision on the conclusion that the Road and Wind Project were not interdependent because the Wind Project would continue with or without the Road Project.  BLM found that NSRE could and would obtain access to the Wind Project over private land should BLM deny the Road Project right of way application.  BLM's conclusion that the Road and Wind Project are not interdependent is at the heart of Plaintiff's action.  The facts that underlie BLM's decision are highly disputed.  First and foremost, BLM's finding is based on NSRE's representation that if BLM were to decline to issue the requested right of way, the Project would nonetheless proceed over a roadway situated entirely on private property.  There is no dispute that a route over private land has been planned and described by NSRE, that the private road would be 28 miles long as compared with a 10 mile long route for the Project Road. It is also not disputed that the private road would involve the construction of more new roadway than would be required for construction of the Project Road and that the total acreage of new, repaved, straightened and widened road, along with the total of acreage disturbed by the construction process would be greater for the private road.  Plaintiffs' main contention is that BLM was clearly erroneous in finding that a route over private is feasible.  Plaintiffs contend the route over private land is not feasible because of the large number of private property owners whose land would be traversed by the route and who had not, at the time of BLM's decision, granted access to NSRE.  Plaintiffs also dispute BLM's finding that the Project Road would have value independent of its use as an access road for the Wind Project.

The parties have submitted statements of undisputed material facts that are far more extensive than what would be required to address the threshold question of whether BLM was clearly erroneous in its determination that the Road Project and the Wind Project are not interconnected such that a broader environmental review of the project would be required.  As

3

will be discussed more completely *infra*, the determination of whether BLM was clearly

erroneous is the sum and substance of Plaintiffs' complaint and of the parties cross-motions for

summary judgment.  For that reason the court will reproduce here only those few undisputed

material facts that play on BLM's determination.

Most of the factual dispute relevant to the instant action is embodied in Federal

Defendants' sixth proffered undisputed material fact and in Plaintiff's accompanying response:

"BLM concluded that analyzing the Wind Project along with the Road Project under NEPA was

useless because [NSRE] would have built the private Wind Project via the Private Road even if

the BLM had denied the Road Project Application.  AR20763.  Doc. # 73-1 at ¶ 6.  Plaintiffs

respond:

> Plaintiffs dispute this statement.  The [Administrative Record] establishes that the private route required the consent of multiple private land owners and that NSRE had not obtained land control necessary to access the private lands and construct the road.  *See* AR8968-69; AR 20861.  Plaintiffs also dispute that BLM's analysis of the "Wind Project under NEPA was useless" because NSRE has elected to pursue the public lands rights-of-way, *see* AR20769-20780, and BLM has statutory authority to condition its grants to protect imperiled wildlife species.  *See* 43 U.S.C. § 1761(a) & (b)(1), § 1765(a).

Id.

Federal Defendants' tenth proffered undisputed material fact alleges that in "December

2010, NSRE applied to the BLM for a right of way for the Road Project to support the Wind

Project.  EA1-1; DR 2.  Plaintiffs respond:

> Plaintiffs do not dispute that NSRE applied to BLM for rights-of-way across public lands in December 2010 in order to construct and operate a wind farm on adjacent private lands.  *See* AR 20793-94.  Plaintiffs dispute BLM's characterization of the "Road Project" and the "Wind Project" as separate actions because the public lands provide the only existing access to the site, *see* AR 17913-14; AR20797, are NSRE's most cost-effective means for accessing the site, *see* AR20794 and provide "the most direct and efficient access" to the site, *see* AR20757.  The "Road Project" and "Wind Project" are, in fact, components of the larger, comprehensive scheme to develop renewable energy on the site.

Doc. # 73-1 at ¶ 10.

The Federal Defendants allege that NSRE informed BLM that it would "pursue

construction of private land access roads if the [Road Project] grant request is denied."  Doc. #

4

73-1 at ¶ 13 (citing AR 20812).  Plaintiffs do not dispute that NSRE made the quoted statement, but dispute that "BLM made any determination about whether NSRE could obtain land control necessary to construct the private route, whether the private route was economically feasible, or whether the private route met NSRE's project milestones." Id. (citing AR8968-69).  Similarly, Plaintiffs do not dispute Federal Defendants' allegation that the "Wind Project" is entirely on private land and that "Kern County acted as the lead agency in reviewing the 'Wind Project's' potential environmental impacts pursuant to the California Environmental Quality Act (CEQA), Cal. Pub. Res. Code §§ 21000 et seq.  AR11546." Doc. # 73-1 at ¶ 38.  Rather, Plaintiffs dispute the Wind Project's characterization as "'private' since it relies on access roads constructed on public lands." Id.

The complaint in this action was filed on April 13, 2012.  Plaintiffs moved for preliminary injunction on May 14, 2012, but that motion was withdrawn on August 28, 2012.  Federal Defendants answered Plaintiffs' complaint on June 1, 2012.  The motion by NSRE to intervene as defendant was granted on June 27, 2012.  Plaintiff's filed their motion for summary judgment on September 7, 2012.  Federal Defendants and NSRE filed their oppositions to Plaintiffs' motion and cross-motions for summary judgment on October 12, 2012.  Plaintiffs filed their opposition to Defendants' cross-motions for summary judgment and reply to Defendant's opposition on October 26, 2012.  Defendants filed their replies to Plaintiffs' opposition to November 9, 2012.

## LEGAL STANDARD

### I. Summary Judgment

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Poller v. Columbia Broadcast System, 368 U.S. 464, 467 (1962); Jung v. FMC Corp., 755 F.2d 708, 710 (9th Cir. 1985); Loehr v. Ventura County Community College Dist., 743 F.2d 1310, 1313 (9th

Cir. 1984).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Although the party moving for summary judgment always has the initial responsibility of informing the court, the nature of the responsibility varies "depending on whether the legal issues are ones on which the movant or the non-movant would bear the burden of proof at trial."  Cecala v. Newman, 532 F.Supp.2d 1118, 1132-1133 (D. Ariz. 2007).  When the moving party has the burden of proof at trial, that party must carry its initial burden at summary judgment by presenting evidence affirmatively showing, for all essential elements of its case, that no reasonable jury could find for the non-moving party.  United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir.1991) (en banc); Calderone v. United States, 799 F.2d 254, 259 (6th Cir. 1986); see also E.E.O.C. v. Union Independiente De La Autoridad De Acueductos Y Alcantarillados De Puerto Rico, 279 F.3d 49, 55 (1st Cir. 2002) (stating that if "party moving for summary judgment bears the burden of proof on an issue, he cannot prevail unless the evidence that he provides on that issue is conclusive.")

     If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968); Ruffin v. County of Los Angeles, 607 F.2d 1276, 1280 (9th Cir. 1979).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the mere allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Rule 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank, 391 U.S. at 289; Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973).  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might

6

affect the outcome of the suit under the governing law, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, <u>Anderson</u>, 477 U.S. 248-49; <u>Wool v. Tandem Computers, Inc.</u>, 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." <u>First Nat'l Bank</u>, 391 U.S. at 290; <u>T.W. Elec. Serv.</u>, 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" <u>Matsushita</u>, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments); <u>International Union of Bricklayers v. Martin Jaska, Inc.</u>, 752 F.2d 1401, 1405 (9th Cir. 1985).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Rule 56(c); <u>Poller</u>, 368 U.S. at 468; <u>SEC v. Seaboard Corp.</u>, 677 F.2d 1301, 1305-06 (9th Cir. 1982).  The evidence of the opposing party is to be believed, <u>Anderson</u>, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, <u>Matsushita</u>, 475 U.S. at 587 (citing <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962)(per curiam); <u>Abramson v. University of Hawaii</u>, 594 F.2d 202, 208 (9th Cir. 1979).  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. <u>Richards v. Nielsen Freight Lines</u>, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), <u>aff'd</u>, 810 F.2d 898, 902 (9th Cir. 1987).

**II.  Judicial Review of Administrative Decision - Administrative Procedures Act**

Judicial review of agency action is governed by Administrative Procedures Act ("APA").

Pursuant to the provisions of the APA as codified at 5 U.S.C. § 706, an agency action may only be set aside if it is "'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.' [Citation.]" Wilderness Soc'y v. United States Fish & Wildlife Serv., 316 F.3d 913, 921 (9th Cir. 2003). Generally, courts give wide discretion to agency factual determinations within their area of expertise. Pub Utility Dist. No. 1 of Franklin County v. Big Bend Elec. Co-op, Inc., 618 F.2d 601, 608 (9th Cir. 1980).

**DISCUSSION**

**I. ESA**

At the heart of the ESA is the requirement that "federal agencies [. . .] ensure that none of their activities, including the granting of licenses and permits, will jeopardize the continued existence of list species or adversely modify a species' critical habitat. [Citation.]" Karuk Tribe of California v. United States, 681 F.3d 1006, 1020 (9th Cir. 2012) (citing Babbitt v. Sweet Home Chapter, 515 U.S. 687, 692 (1995)). "Section 7 of the ESA imposes on all agencies a duty to consult with either the Fish and Wildlife Service or the NOAA Fisheries Service before engaging in any discretionary action that may affect a listed species or critical habitat." Id. (citing Turtle Island Restoration Network v. Nat'l Marine Fisheries Serv., 340 F.3d 969, 974 (9th Cir. 2003)). The regulations implementing Section of the ESA require that:

> Each Federal agency shall review its actions at the earliest possible time to determine whether any *action* may affect listed species or critical habitat . If such a determination is made, formal consultation is required . . . .

50 C.F.R. § 402.14(a) (italics added). Among the actions of an agency that constitute "action" within the meaning of the regulation are "the granting of licenses, contract, leases, easements, rights of way, permits, or grants-in-aid." 50 C.F.R. § 402.02.

However, regulations limit the application of Section 7 to "actions in which there is discretionary Federal involvement or control." Nat'l Ass'n of Home Builders v. Defenders of Wildlife, 551 U.S. 644, 666 (2007). There are two inquiries in the determination "Federal involvement or control." First, a court must determine whether an agency affirmatively

8

performed one of the actions set forth in 50 C.F.R. § 402.02.  In this case there is no dispute that

the BLM action in question – the grant of a requested right-of-way – is an action of the sort listed

in 50 C.F.R. § 402.02.  Second, the court must determine "whether the agency [has] some

discretion to influence or change the activity for the benefit of a protected species."  Karuk Tribe,

681 F.3d at 1021.  "The touchstone of major federal action [triggering the requirement of

consultation] is an agency's authority to influence significant nonfederal activity."  Sierra Club v.

Hodel, 848 F.2d 1068, 1089 (10 Cir. 1988) ("Hodel").  This is the central point upon which

Plaintiff's action turns.

What triggers an agency's obligation to consult is the taking of "any discretionary action

that *may affect* a listed species or critical habitat."  Babbitt, 515 U.S. at 692.  The question

therefore is what *effects* BLM is to be considered responsible for when it grants the requested

right of way to NSRE.  Regulations enabling Section 7 of the ESA provide the following

definition of the "effects" of a project:

> Effects of the action refers to the direct and indirect effects of an action of the
> species or critical habitat, together with the effects of other activities that are
> interrelated or interdependent with that action, that will be added to the
> environmental baseline.  The environmental baseline includes the past and present
> impacts of all Federal, State or private actions and other human activities in the
> action area, the anticipated impacts of all proposed Federal projects in the action
> area that have already undergone formal or early section consultation, and the
> impact of Sate or private actions which are contemporaneous with the
> consultation in process.  *Indirect effects* are those that are caused by the proposed
> action and are later in time, but are reasonably certain to occur.  *Interrelated
> actions* are those that are part of a larger action and depend on the larger action for
> their justification.  *Interdependent action* are those that have no independent
> utility apart from the action under consideration.

50 C.F.R. § 402.02 (italics added).

A federal agency's duty to consult under Section 7 is triggered by the direct and indirect

affects of *its* actions, along with the effects of *interrelated and interdependent* actions on listed

species.  See Sierra Club v. Marsh, 816 F.2d 1367, 1387 (9 Cir. 1987) ("Marsh") (duty to

reinitiate consultation is imposed where new information reveals interrelated or interdependent

actions may have effects on listed species).  On the other hand, effects that are "cumulative" to

the federal Road Project do not trigger Section 7's consultation requirement.  Center for Biological Diversity v. BLM, 698 F.3d 1101, 1113 (9th Cir. 2012).  "Cumulative effects" are defined as "those effects of future State or private activities, not involving Federal activities, that are reasonably certain to occur within the action area of the Federal action subject to consultation."  50 C.F.R. § 402.02; see also Marsh, 816 F.3d at 1387 ("The effects of unrelated private or state activities that are reasonably certain to occur are 'cumulative effects'").

There is no allegation that the Road Project, in isolation, has any significant impact with regard to listed species.  Thus, the issue that is the focus of both parties is whether the Road Project and the Wind Project are "interrelated" or "interdependent" within the meaning of 50 C.F.R. § 402.02, or whether the effects of the Wind Project are merely "cumulative" to the effects of the Road Project making consultation by BLM unnecessary.  See Center for Biological Diversity, 689 F.3d at 1113 (categorization of relationship of projects is critical because "nonfederal actions giving rise to 'cumulative effects' are not enforceable under the ESA, meaning that: they are not subject to the ESA consultation procedures . . . .").  "The test for interrelatedness or interdependentness is 'but for' causation: but for the federal project, these activities would not occur. [citation.]"  Marsh, 816 F.2d at 1387 (citing 51 Fed.Reg. 19,932 (1986)).

Plaintiffs present what they represent are two different arguments for the proposition that BLM unlawfully granted NSRE's right of way request without consultation with Fish and Wildlife Service as required by Section 7.  In actuality, there is only one relevant argument.  Recalling that an "agency action" giving rise to a duty to consult has two components: the component of affirmative action to carry out the underlying activity and the component of discretion to influence the activity to benefit a listed species, Karuk Tribe, 681 F.3d at 1021, Plaintiffs argue  "that the 'action' that BLM must evaluate in its 'may effect' analysis is the entire Project, i.e. the rights of way and the wind turbines.  Each are components of a single, comprehensive wind energy development scheme, and the sole purpose of the rights-of-way is to

provide the access and transmission connections to build and operate the Project."  Doc. # 64-1 at

20:18-21 (italics in original).  It is obvious to the court that Plaintiffs' argument regarding the

"oneness" of the Wind and Road Project is a conclusion based on the success of Plaintiffs'

contention that the Road and Wind Projects are interdependent and/or interconnected.  In the face

of Defendants' contention that the Road and Wind Projects are separate, there is no reason for the

court to accept, *a priori*, the proposition that they are the same Project.

At this point, Plaintiff's argument takes an ambiguous turn.  Essentially, Plaintiffs

contend that BLM had *discretio*n to influence NSRE's private conduct with regard to the Wind

Project because BLM *could have* conditioned a grant of the requested right-of-way on significant

concessions by NRSE in favor of the listed species.  There are two possible interpretations of

Plaintiffs' contention: either (1) Plaintiff's are contending that BLM had actual discretion to

impose changes on NRSE's conduct because the Road Project and the Wind Project were parts

of the same overall Project (this is obviously a contention that presupposes the success of

Plaintiffs' argument concerning interconnectedness of the two projects as noted above); or (2) it

is possible that Plaintiffs are contending that BLM has *discretion* to influence private behavior in

favor of a listed species if it would successfully bargain with the NSRE using its grant of right-

of-way as a bargaining chip.  This latter contention, in the court's opinion, stretches the idea of

agency discretion too far.  While the ability to play a bargaining chip wisely may indeed result in

changes in private conduct benefitting listed species, the actual discretion in such a situation

belongs to the private party to accept the bargain or not, not to the federal agency.  In this court's

view, agency discretion must refer to something more than the ability to play a good hand of

poker.

The court concludes that Plaintiff's cannot escape the need to demonstrate that, contrary

to BLM's determination, the Wind Project and the Road Project were either interrelated or

interdependent within the meaning of 50 C.F.R. § 402.02.  In this regard there are two sub-issues;

first, what standard of review is applicable to BLM's determination the two Projects were not

1  interrelated or interdependent; and, second, are facts discernable in the Administrative Record

2  that adequately support BLM's conclusion under the appropriate standard of review?

3          BLM's "no jeopardy" determination is a "final agency action" with regard to BLM's

4  actions with regard to the ESA and is therefore subject to judicial review under the

5  Administrative Procedures Act.  Southwest Center for Biological Diversity v. Bureau of

6  Reclamation, 143 F.3d 515, 522 (9th Cir. 1988).  As noted previously, an agency action may only

7  be set aside if it is "'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance

8  with law."  Wilderness Soc'y, 316 F.3d at 921.

9              To determine whether an agency action was arbitrary and capricious, the court
               must "determine whether the agency articulated a rational connection between the
10             facts and the choice made." [Citation.] As long as the agency decision was based
               on a consideration of relevant factors and there is no clear error of judgment, the
11             reviewing court may not overturn the agency's action. [Citation.] In particular the
               reviewing court must defer to the agency's decision when the resolution of the
12             dispute involves issues of fact or requires a high level of technical expertise.
               [Citations.] Accordingly, the court may set aside only those conclusions that do
13             not have a basis in fact, not those with which it disagrees. [Citation.]

14  San Francisco Baykeeper v. Army Corps of Engineers, 219 F.Supp.2d 1001, 1011-1012 (N.D.

15  Cal. 2002) ("Baykeeper") (internal citations omitted).

16          At the outset, it is significant that Plaintiffs do not allege that BLM failed to consider or

17  make a determination whether the Road Project and the Wind Project are interdependent or

18  interconnected.  Plaintiffs contend, rather, that BLM considered evidence pertaining to the

19  possible interconnectedness of the Projects and came to a conclusion that was capricious or

20  contrary to fact.   Plaintiffs contend that the evidence available from the Administrative Record

21  ("AR") is insufficient to establish that BLM had any purpose in granting the right-of-way other

22  than to facilitate the Wind Project, on one hand, or to establish that the Wind Project could exist

23  but for BLM's grant of right of way on the other.  Of these, the allegation that the Wind Project

24  would not exist but for the Road Project is the more weighty consideration with regard to both

25  Plaintiffs' ESA and NEPA claims.  However, the court will first briefly address Plaintiffs'

26  contention that the Road Project would not exist but for the Wind Project.

27

28                                              12

1    BLM opposes Plaintiff's contention by pointing out that it concluded that the

2    development of a road across the right of way would serve public purposes not connected to the

3    Wind Project such as improving access control to the Pacific Rim Trail.  Plaintiffs do not

4    contend that the benefits BLM finds in the completion of the Road Project are specious or

5    illusory; instead Plaintiffs characterize these alleged benefits as "weak."  However, Plaintiffs

6    point to no authority for the proposition that the strength of the independent benefits to BLM

7    from the Road Project must be sufficient to cause BLM to build the road with BLM's money

8    even in the absence of any Wind Project before the Projects can be deemed unrelated.  In the

9    court's view, the legal standard applicable to its review of BLM's decision requires that the court

10   ask whether BLM can point to facts supporting its determination that the Road Project was of

11   *some* benefit to BLM's purposes independent of servicing the Wind Project so that it would be

12   reasonable for BLM to permit NSRE to build the road with NRSE's money.  Since BLM has

13   cited *some* benefits that accrue to BLM's purposes independent of the construction or servicing

14   of the Wind Project, BLM has shown that it was not unreasonable in allowing NSRE to build the

15   Road Project at NSRE's expense since BLM stood to benefit for public purposes at no public

16   cost.  As this court understands its standard of review, this is all that BLM is required to show to

17   support its decision that the Wind Project was not the "but for" cause of the Road Project.

18       Having shown that the Wind Project was not the "but for" cause of the Road Project,

19   BLM need only show that evidence existed in the Administrative Record to show that their

20   determination that the Road Project was not the "but for" cause of the Wind Project was not

21   arbitrary, capricious or contrary to law.  The court will discuss this issue in detail below in

22   connection with Plaintiff's NEPA claim.  However, in the interest of brevity the court simply

23   states here that it is satisfied that facts in the Administrative Record do support BLM's

24   conclusion that the Wind Project could have been completed by NSRE without the benefit of

25   BLM's grant of right-of-way.  Consistent with its standard of review, the court therefore finds

26   that BLM's conclusion that the Wind and Road Projects were not interdependent for purposes of

27

28                                                 13

1    the Endangered Species Act is not arbitrary, capricious, or contrary to law.  BLM was therefore

2    not erroneous in confining it's EA to the impacts occasioned by the Road Project itself and was

3    therefore not erroneous in determining that formal consultation was not required under the ESA.

4    **II.  NEPA**

5         NEPA is the basic "national charter for protection of the environment."  40 C.F.R.
      § 1500(a).  It requires all federal agencies to prepare an environmental impact
6      statement (EIS) for "major federal actions significantly affecting the quality of the
      human environment."  42 U.S.C. § 4332(C).  The responsible federal agency may
7      first choose to prepare an environmental assessment (EA), a preliminary
      document which "briefly provides sufficient evidence and analysis for
8      determining whether to prepare an environmental impact statement or finding of
      no significant impact."  40 C.F.R. § 1508.9.  After considering the EA, the agency
9      may then decide to issue either a finding of no significant impact (FONSI) or a
      more detailed EIS.

10   Baykeeper, 219 F.Supp.2d at 1007.

11        Under NEPA, an agency is required to provide an EIS only if it will be
      undertaking a "major Federal Actio[n]." which "significantly affect[s] the quality
12     of the human environment.  42 U.S.C. § 4332(2)(C).  Under applicable CEQ
      regulations, "major Federal action" is defined to "include actions with effects that
13     may be major and which are potentially subject to Federal control and
      responsibility.  40 C.F.R. § 1508.18 (2003).  "Effects" is defined to "include: (a)
14     Direct effects, which are caused by the action and occur at the same time and
      place," and (b) Indirect effects, which are caused by the action and are later in
15     time or farther removed in distance, but are still reasonably foreseeable."  40
      C.F.R. § 1508.8.
16

17   Dep't of Transportation v. Public Citizen, 541U.S. 752, 763-764 (2004) ("DOT").

18        Unlike the analysis of effects under ESA, "indirect effects" under NEPA is understood to

19   include *cumulative* effects including those of non-Federal actors.  Baykeeper, 219 F.Supp.2d at

20   1016-1017.  Pursuant to 40 C.F.R. § 1508, a EIS or EA "must consider the cumulative effects of

21   a project" in addition to project specific impacts.  Id.  For purposes of NEPA, cumulative impacts

22   are defined as:

23        the impact on the environment which results from the incremental impact of the
      action when added to other past, present and reasonably foreseeable future actions
24     regardless of what agency (Federal or non-Federal) or person undertakes such
      other actions.  Cumulative impacts can result from individually minor but
25     collectively significant actions taking place over a period of time.

26   40 C.F.R. § 1508.7.  Although NEPA arguably encompasses a broader range of actual or

27   potential effects in determining whether the Federal action is a "major action" requiring an EIS, a

28                                              14

Federal agency has no duty to consider cumulative effects where the agency "has no ability to prevent a certain effect due to its limited statutory authority over the relevant actions." DOT, 541 U.S. at 770.

As is the case with federal agency decisions regarding ESA, the standard for review of agency decisions under NEPA is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); DOT, 541 U.S. at 763; Marsh v. Oregon Nat. Res. Council, 490 U.S. 360, 375 (1989).

> [I]n making the factual inquiry concerning whether an agency decision was "arbitrary or capricious." the reviewing court "must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment."  The inquiry must "be searching and careful," but "the ultimate standard of review is a narrow one." [Citation.] When specialists express conflicting views, an agency must have discretion to rely on the reasonable opinions of its own qualified experts even if, as an original matter, a court might find contrary views more persuasive.

Id. at 378 (quoting Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971). While an agency's decision must be supported by facts evident in the administrative record, the burden to prove that the agency's decision was unreasonable or an abuse of discretion falls on the party challenging the agency's determination.  Hodel, 848 F.2d at 1089.

Plaintiffs contend that the FONSI determination in BLM's EA was arrived in a manner contrary to law because the EA failed to take into account the impacts of the Wind Project; that is, Plaintiffs contend there is but one Project of which the Road Project and the Wind Project are parts.  Since a federal agency is required to consider all impacts resulting from its actions, Plaintiffs contend the failure to consider impacts arising from the "wind portion" of the Project is contrary to law.  As above, Defendants counter by contending the Wind Project – a private project on private land – did not and does not depend on BLM's grant of rights-of-way for its existence and that BLM therefore has no authority over the development of the Wind Project.  In framing and presenting their contentions and counter-contentions, the parties either tacitly or expressly agree to certain facts which the court takes as background.  First, there is no contention that BLM's EA erroneously arrived at a conclusion of "no significant impact" with respect to the

proposed Road Project as limited by BLM's conception of it.  That is, there is no contention that

BLM's FONSI with respect to the grading, paving, straightening, and trenching the right of way

to accommodate transmission and communications lines over its length was erroneous.  Second,

there is no contention that BLM gave no consideration to the connection between the Road

Project and the Wind Project; there is only the contention that BLM gave consideration and came

to the wrong conclusion.  Third, there is no dispute that the Wind Project did, in fact, receive

environmental review under the California Environmental Quality Act, which serves the same

function as NEPA for purposes of projects coming under state jurisdiction, and that the review

was carried out by Kern County officials.

The determination of the connectedness of federal and non-federal actions under NEPA

differs from the "but for" test applicable to the same question under ESA in two ways that are

significant in the context of this action.  First, under NEPA, "a 'but for' causal relationship is

insufficient to make an agency responsible for a particular effect under NEPA and the relevant

regulations."  DOT, 541 U.S. at 767.  "NEPA requires 'a reasonably close causal relationship'

between the environmental effect and the alleged cause.  The court analogized this requirement

to the 'familiar doctrine of proximate cause from tort law.'"  Id. (quoting Metropolitan Edison

Co. v. People Against Nuclear Energy, 460 U.S. 466, 774 (1983).  Second, "inherent in NEPA

and its implementing regulations is a 'rule of reason' which ensures that agencies determine

whether and to what extent to prepare an EIS based on the usefulness of any new potential

information to the decision making process. [Citation.] Where the preparation of an EIS would

serve 'no purpose" in light of NEPA's regulatory scheme as a whole, no rule of reason worthy of

that title would require an agency to prepare an EIS. [Citations.]"  DOT, 541 U.S. at 767-768

(internal citations and quotes omitted).

The court first turns to the central issue of whether BLM's decision to confine its

environmental assessment solely to the Road Project and to omit any consideration of the impact

of the wind turbines on protected species was clearly erroneous or contrary to law.  As noted, that

decision is not erroneous if BLM's grant of right-of-way to NSRE is not the proximate cause of

16

the environmental harms that are at issue.  "The requirement for a NEPA study hinges on the presence of major federal action."  Hodel, 848 F.2d at 1089.  While NEPA does not define "major federal action," the regulatory framework requires an agency to address actions by the federal agency and "actions by nonfederal actors 'with effects that may be major *and which are potentially subject to federal control and responsibility*.'" Id. (quoting 40 C.F.R. 1508.18) (italics in original).  "The touchstone of major federal action [. . .] is an agency's authority to influence significant nonfederal activity.  This influence must be more tha the power to give nonbinding advice to the nonfederal actor." Id.  Plaintiffs' argument in favor of major federal action is based on the contention that BLM has control over NSRE's actions because BLM's grant of right-of-way is a necessary precondition to the existence of NSRE's Wind Project.  Neither party makes any claim that BLM would have any authority at all over NSRE's activities but for their access to the Wind Project over federal land.  Defendants, as previously noted, contend that the Wind Project would exist without the right of way across Federal land and that consequently BLM has no authority to influence the Wind Project.

It is important to keep in mind that the court's function is not to determine whether the Wind Project is dependant on BLM's grant of right-of-way over federal land.  Pursuant to the standard of review discussed above, the court's task is to determine whether BLM had a reasonable basis for its conclusion that the Wind Project was not dependant on BLM's grant of right-of-way.  There is no dispute that the preliminary draft EA submitted by NSRE was rejected by BLM with directions to "'integrate and incorporate by reference the private land alternative and fully analyze it in the EA.'" Doc. # 73-2 at ¶ 17 (quoting a communication between BLM and NSRE dated October 18, 2011).  It is also not disputed that the final EA gives a full description of the private alternative route and describes the time and work required to develop that route as well as the potential disturbances to the environment resulting from the development of the private route.  Practically speaking, Plaintiffs' contention that the right of way was the "but for" cause of the Wind Project is voiced in Plaintiffs' oft-repeated assertion that "Plaintiff's dispute that BLM made any determination about whether NSRE could obtain land control

17

1   necessary to construct the private route, whether the private route was economically feasible, or

2   whether the private route met NSRE's project milestones." Doc. # 73-2 at 16:15-17.

3        Plaintiffs do not provide case authority for the proposition that any particular facts need to

4   be alleged or proved to provide a sufficient factual basis for BLM's conclusion that the private

5   alternative route is plausible.  Plaintiffs appear to have identified two elements – landowner

6   cooperation, and financial acceptability – that they allege were not adequately considered by

7   BLM and assert without any legal support that BLM's determination must be held arbitrary,

8   capricious or contrary to law in the absence of proof of those facts.  The court concludes that

9   Plaintiffs are asking the court to substitute its judgment for that of BLM to an extent that is not

10  permissible under the governing standard of review.  The function of BLM is, in major part, to

11  act as the primary intermediary at the interface between private activity and public resource

12  ownership.  Assessment of what is and is not within the realm of plausible private activity is

13  necessarily well within the scope of what BLM must routinely determine and BLM is therefore

14  entitled to wide deference with regard to the decisions they reach.  Pub. Utility Dist. No. 1 of

15  Franklin County, 618 F.2d at 608.

16       The administrative record and the undisputed facts establish that BLM knew how many

17  parcels, how many owners and how much right-of-way was involved in the private road option.

18  Where the record establishes that these facts were before the BLM and considered by them (as is

19  admittedly the case here) the court is in no position to impose a contrary conclusion simply

20  because an opposing party is of the opinion that more proof should have been required.  As to

21  Plaintiffs' contention that BLM was also obliged to consider whether the private road option was

22  within financially acceptable limits as far as NSRE was concerned or met their project time

23  requirements, the court finds that Plaintiffs are impermissibly trying to shift the burden of proof

24  onto BLM.  While there is evidence in both the undisputed facts and in the Administrative record

25  that the private alternative would have been more costly and would perhaps have presented some

26  challenges to NSRE's funding because of possible funding restrictions, there is no admission or

27  facts to support a conclusion that NSRE would have abandoned the project in the absence of

28                                              18

BLM's grant of right-of-way.  If BLM's decision regarding NSRE's financial capability to carry out the private road alternative involves some speculation, Plaintiff's contention that financial considerations would have prevented the Wind Project in the absence of BLM's grant of right-of-way necessarily requires equal speculation in the opposite direction.

The court observes that any assessment of a third party's ability to do anything prior to the time they actually do it necessarily involves some speculation.  Plaintiffs, as the party opposing BLM's decision to grant the right-of-way, have the burden to show that BLM's speculation – assuming there was any – with regard to NSRE's capacity to carry out the private option was arbitrary, capricious or contrary to law.  Plaintiffs have failed to meet the required standard of proof.  Where, as here, the opposing party is not able to show what the legal limits to the speculative discretion of a federal agency are, the court must give the nod to the federal agency where their assessment, including any speculation they must make, is within the scope of their presumed expertise.  Plaintiffs allege that BLM was completely aware of the interaction between NSRE's project scheduling demands and its funding and alleges that BLM took those issues into consideration.  In fact, Plaintiffs allege BLM was unduly influenced by NSRE's concerns over its project deadlines.  Having made that factual concession, Plaintiffs cannot argue that BLM failed to give consideration to financial and temporal factors involved in NSRE's ability to execute the private road option.  Plaintiffs allege no facts from which the court could draw the conclusion that BLM's conclusion was arbitrary, capricious or contrary to law.

In addition, the so-called "rule of reason" also favors the conclusion that  BLM's decision not to include effects from the Wind Project in its EA was arbitrary or capricious.  It is not disputed that the Wind Project was subject to scrutiny under California's Environmental Quality Act ("CEQA") and that an Environmental Impact Report ("EIR") was produced as a result of that process.  "The statutory provisions of CEQA expressly allow that an EIS, which is the NEPA counterpart to an EIR, may be used in lieu of an EIR if the EIS, or that part of the EIS that is used, 'complies with the requirements of this division and the guidelines adopted pursuant thereto.'  ([Cal. Pub. Res. Code] § 21083.5, subd. (a))."  Nelson v. County of Kern, 190

Cal.App.4th 252, 279 (5 Dist. 2010).  While neither party has offered, and the court cannot find, any statutory basis for reciprocal acceptance of a CEQA-produced EIR in lieu of a NEPA-mandated EIS, the "rule of reason" militates against the imposition of information-gathering and dissemination burdens on Federal agencies that are duplicative of information previously gathered, circulated and subjected to public comment in the state process.

Plaintiffs concede that all of the effects on protected species that may foreseeably arise as a result of BLM's grant of right-of-way are a result of the operation of the planned wind turbines only, whether or not the Wind Project and the Road Project are considered a single Project. Second, and perhaps more tellingly, there is no allegation or contention that important information concerning threats to protected species went undetermined, unconsidered, undisclosed or withheld from public scrutiny in the state CEQA process.  Seen in this light, Plaintiffs' contention that BLM unlawfully failed to conduct a full EIS and instead issued a FONSI appears to center more on the formalities of procedure rather than on environmental benefits potentially lost.  While it is no doubt true that Plaintiffs disagree with the outcome of the state process, the court has no facts before it to conclude that requiring BLM to produce an EIS that takes into account the environmental impacts of the Wind Project would produce anything more than an opportunity for Plaintiffs to advance the same arguments on the same facts that were advanced in the state CEQA process.  While the rule of reason is not determinative, in and of itself, of the issue of whether BLM unlawfully failed to produce an EIS that incorporated the expected impacts if the Wind Project on protected species, it is clear that the rule of reason does not favor Plaintiffs' position.

Since Plaintiffs argument fails to show that BLM's conclusion that the private road option was viable is either clearly erroneous or contrary to law, it follows that Plaintiffs' contention that BLM was clearly erroneous in its determination that BLM lacked authority over NSRE's actions also fails.

## CONCLUSION AND ORDER

Plaintiff's complaint requests declaratory judgment as to Plaintiff's contentions that BLM

20

violated both the ESA by erroneously reaching a "no effect" determination with regard to the proposed grant of right-of-way to NSRE and seeks declaratory judgment as to their contention that BLM's FONSI and its reliance thereon in the granting the right-of-way to NSRE violates NEPA.  Pursuant to the foregoing discussion, Plaintiff's are not entitled to summary judgment and Defendant's are correspondingly entitled to summary judgment as to Plaintiffs' first and second claims for relief as a matter of law.   Because Plaintiffs' claims for declaratory relief fail, their claim for injunctive relief fails as well and Defendants' are correspondingly entitled to summary judgment as to Plaintiffs' action for injunctive relief.


THEREFORE, for the reasons discussed above, it is hereby ORDERED that Plaintiffs' motion for summary judgment is DENIED in its entirety.  Defendants' motion for summary judgment is correspondingly GRANTED in its entirety.  The Clerk of the Court shall enter judgment in favor of Defendants and CLOSE the CASE.


IT IS SO ORDERED.

Dated:    January 11, 2013      _____

SENIOR  DISTRICT  JUDGE